

**SO ORDERED,**

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: March 29, 2021**

The Order of the Court is set forth below. The docket reflects the date entered.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE:  MATTHEW P. ERNST<br>           HANNAH N. ERNST | CASE NO. 20-50368-KMS |
| DEBTORS | CHAPTER 7 |
| KIMBERLY R. LENTZ.,<br>as Chapter 7 Trustee for the Bankruptcy Estate of<br>Matthew P. Ernst & Hannah N. Ernst, Debtors | PLAINTIFF |
| V. | ADV. PROC. NO. 20-06018-KMS |
| NATIONAL DEBT RELIEF LLC | DEFENDANT |

### OPINION AND ORDER
### <u>GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS</u>

This matter came on for hearing on the following two motions by Defendant National Debt Relief LLC ("NDR"): the Motion for Judgment on the Pleadings or to Compel Arbitration, ECF No. 17, with Response by Plaintiff Kimberly R. Lentz ("the Trustee"), ECF No. 21; and the Motion to Dismiss, ECF No. 13, also with Response by the Trustee, ECF No. 20. The dispute centers on the alleged prepetition participation by Debtors Matthew P. Ernst and Hannah N. Ernst in what the Trustee describes as NDR's "debt relief and credit repair program." Am. Compl. ¶ 4, ECF No. 12.

The Amended Complaint ("Complaint") alleges four counts. Counts I, II, and III are core under, variously, 28 U.S.C. § 157(b)(2)(A), (E), and (H)—for turnover of records under 11 U.S.C. § 542(e), avoidance of fraudulent transfers under 11 U.S.C. § 548(a) with recovery under 11 U.S.C. § 550, and an accounting under 11 U.S.C. § 542(a). *Id.* ¶¶ 71-91, ECF No. 12 at 9-11. Count IV is non-core under the Credit Repair Organizations Act (CROA), 15 U.S.C. §§ 1679-1679j. In Count IV ("CROA Count"), the Trustee seeks damages or, in the alternative, rescission of NDR's alleged agreement with the Ernsts and restitution of the more than $10,000 that, according to the Trustee, the Ernsts paid NDR. Am. Compl. ¶ 117, ECF No. 12 at 14-15. Taken together, the motions seek a judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure ("Rules") on the bankruptcy counts; and as to the CROA Count, either dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)[1] based on the Trustee's lack of standing, or if there is standing, either an order compelling arbitration or a judgment on the pleadings.

This Opinion and Order resolves only the bankruptcy counts, granting the Motion for Judgment on the Pleadings. As to the CROA Count, the Motion to Dismiss is denied separately. *See* ECF No. 33. As to the Motion for Judgment on the Pleadings or to Compel Arbitration of the CROA Count, the Court submits separately to the district court Proposed Findings of Fact and Conclusions of Law Recommending Entry of Order Compelling Arbitration and Dismissing CROA Count. *See* ECF No. 34.

**I. STANDARD UNDER RULE 12(c)**

"A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the

---

[1] Rules 12(b) and (c) of the Federal Rules of Civil Procedure apply in adversary proceedings. Fed. R. Bankr. P. 7012(b).

2

substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990). The standard is the same as under Rule 12(b)(6) for failure to state a claim. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). "[Courts] accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Id.* The court will not, however, "strain to find inferences favorable to the plaintiffs." *Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (quoting *Westfall v. Miller*, 77 F.3d 868, 870 (5th Cir. 1996)).

A complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim that is facially plausible supports a reasonable inference that the defendant is liable for the alleged misconduct, not merely that the defendant possibly engaged in the misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" nor "'naked assertion[s]' devoid of 'further factual enhancement'" will do. *Id.*

Generally, the court may consider only the contents of the pleadings, including attachments, and documents attached to either a motion to dismiss or an opposition "when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). If allegations conflict with a contract attached by either the plaintiff or the defendant, the contract controls. *See Campbell v. DLJ Mortg. Cap., Inc.*, 628 F. App'x 232, 234 (5th Cir. 2015) (citing *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440-41 (5th Cir. 2015)).

Here, the Court considers these documents:

- email correspondence history between the Ernsts and NDR, according to which the Ernsts e-signed a document titled "Debt Relief Agreement for Matthew Ernst" ("NDR Contract"), ECF No. 12-1 at 1-2 (attached to Am. Compl.);

- Client Retainer Agreement ("Gitmeid Contract") between the Ernsts and the Law Offices of Robert S. Gitmeid & Associates PLLC ("Gitmeid"), ECF No. 16-1 (attached to Answer and motions);

- Dedicated Account Agreement and Application ("Global Contract") between Matthew Ernst and Global Client Solutions LLC ("Global"), ECF No. 16-2 (attached to Answer and motions).

- first page of the Gitmeid Contract, Gitmeid's privacy policy, Gitmeid's Notice of Cancellation form with the Ernsts' names pre-filled, NDR's privacy policy, and instructions from NDR as "your partner in debt relief" suggesting that the recipient change creditors' point of contact to Gitmeid's address, ECF No. 12-1 at 3-7 (attached to Am. Compl.).

NDR also submitted two exhibits attached only to the motions: the online records of the Mississippi Secretary of State's office showing that Gitmeid, not NDR, was registered to do business in Mississippi at the relevant time. ECF Nos. 13-2, 17-2; ECF Nos. 13-3, 17-3. The Court does not consider these attachments, because whether NDR was registered to do business in Mississippi is irrelevant to the Trustee's action.

## II. FACTS ACCEPTED AS TRUE

In May 2016, the Ernsts were struggling to stay current on their debt payments. Am. Compl. ¶¶ 46-48. They did not want to file bankruptcy. *Id.* ¶ 46. The Ernsts saw some of NDR's marketing materials, called the number listed, and talked with an NDR sales representative. *Id.* ¶

4

49-50. The representative explained the benefits of NDR's program, including that it would improve the Ernsts' credit rating and help them reduce their debt. *Id.* ¶ 51-53. He told the Ernsts that the program was a viable alternative to bankruptcy. *Id.* ¶ 54. And he told them the program required them to stop paying their creditors and instead pay NDR more than $500 a month. *Id.* ¶¶ 57, 59. Relying on what the representative told them, the Ernsts electronically signed the NDR Contract on May 10, 2016, and stopped paying their creditors. *Id.* ¶¶ 2, 56, 58, 60; Am. Compl. Ex. 1, ECF No. 12-1 at 1-2.

That same day, the Ernsts electronically signed the Gitmeid Contract, under which Gitmeid—not NDR—would provide legal services to help the Ernsts negotiate and settle their unsecured debts. Answer Ex. A, ECF No. 16-1 at 3, 6. The Ernsts enrolled $34,486 of debt with Gitmeid—not NDR—and agreed to a monthly payment of $593 for approximately forty-two months. *Id.* at 9. As part of the program, Gitmeid required the Ernsts to set up a special-purpose bank account into which the Ernsts would deposit the monthly payments and from which negotiated settlements could eventually be paid. *Id.* at 4. The Ernsts authorized Gitmeid to disburse funds from the account to pay settlements and Gitmeid's legal fees. *Id.*

Also that day, Matthew Ernst electronically signed the Global Contract, thereby setting up the required bank account, which was a sub-account within a master custodial account at a bank selected by Global. Answer Ex. B, ECF No. 16-2 at 1, 4. Ernst authorized Global to debit his primary bank account for the $593 monthly payment due under the Gitmeid Contract and for fees that Global would charge. *Id.* at 4. Ernst could access the monthly statements for his sub-account online or opt for paper statements by mail. *Id.* at 1.

Gitmeid, Global, and NDR were separate but interlocking pieces of one whole, a fact implied by the Gitmeid and NDR documents attached to the Complaint. However, neither the Gitmeid Contract nor the Global Contract authorized any payments from the Ernsts to NDR.

For the forty-four months between May 2016 and January 2020, the Ernsts paid more than $10,000 for debt relief and credit repair services. Am. Compl. ¶ 4. When they filed the underlying chapter 7 case in February 2020, they scheduled $32,217 in nonpriority unsecured debt. *See In re Ernst*, Ch. 7 Case No. 20-50368-KMS, Sch. E/F, ECF No. 3 at 24 (Bankr. S.D. Miss. filed Feb. 26, 2020).

### III. CONCLUSIONS OF LAW

The Complaint alleges that NDR engaged in two wrongful acts, only one of which is at issue on the Motion for Judgment on the Pleadings as to the bankruptcy counts. One wrongful act was the misrepresentations by NDR and its sales representative of the benefits of the program in which the Ernsts enrolled; liability for that act is alleged under CROA. The wrongful act alleged under the Bankruptcy Code was NDR's receipt of payments from the Ernsts for services that were not worth what the Ernsts paid for them. It follows that if the Ernsts did not pay NDR for the services, the Trustee cannot prevail on the Bankruptcy Counts. Accordingly, the dispositive question on the Motion for Judgment on the Pleadings as to the bankruptcy counts is whom did the Ernsts agree to pay, NDR or Gitmeid.

The Trustee alleges that the Ernsts agreed to pay NDR, supporting the allegation only with an email correspondence history establishing the existence of the NDR Contract. The Trustee has not provided the NDR Contract itself, so its terms are unknown. But the Trustee's insurmountable problem is that NDR has provided the Gitmeid Contract, under which the Ernsts agreed to pay Gitmeid for services in an amount consistent with what the Trustee alleges the Ernsts paid NDR.

6

Because a contract controls over contradicting allegations in a complaint, the substance of the pleadings shows that the Ernsts agreed to make payments to Gitmeid in the amount the Trustee alleges were made to NDR and that the Ernsts contracted with Gitmeid to provide services in exchange for those payments. In other words, whatever the terms of the NDR Contract, the Trustee's allegations against NDR map precisely onto what the Ernsts agreed to with Gitmeid.

The Trustee has not even attempted to reconcile the terms of the Gitmeid Contract with her allegation that the Ernsts paid NDR. She protests only that it is implausible to conclude that NDR was working for free. ECF No. 21 at 4. The Court agrees that NDR would not have worked for free. But what is implausible is the inference that the Ernsts paid NDR the amount the Trustee alleges when the Ernsts' debts were enrolled with Gitmeid. The Trustee's argument is especially unconvincing because she knew when she filed this adversary proceeding that the Ernsts had a contract with Gitmeid; she attached two pages of it to the Complaint. She also knew that the Ernsts themselves, who are in the best position to know which entity they paid, believed that Gitmeid and Global would be the correct defendants. *See* Ch. 7 Case No. 20-50368, Sch. A/B, ECF No. 3 at 8 (listing as financial asset "[p]ossible claim against Robert S. Gitmeid and Global Client Solutions"). Finally, payments were disbursed only through the Global account, and the Ernsts either received or had online access to the monthly statements. Consequently, the Ernsts could have shown the Trustee where the money went.

The Trustee also argues that even if NDR did not receive all the money the Ernsts paid, it received at least some, implying that NDR may have shared in payments the Ernsts made to Gitmeid or Global. *See* ECF No. 21 at 4. The Court does not consider this new theory of liability. The Complaint does not allege facts supporting indirect payments; it alleges that the Ernsts paid NDR. *See Sneed v. Austin Indep. Sch. Dist.*, No. 1:19-CV-608-LY, 2020 WL 5951507, at *5 (W.D.

Tex. Sept. 16, 2020) (["N]ew facts or claims made in response to a motion to dismiss to defeat the motion are not incorporated into the original pleadings.").

### A. The Fraudulent Transfers Count Fails

The Trustee alleges that the Ernsts paid NDR approximately $500 per month that the Trustee may avoid as fraudulent transfers under 11 U.S.C. § 548 and recover for the bankruptcy estate under 11 U.S.C. § 550. Am. Compl. ¶¶ 82, 86. To survive NDR's motion under Rule 12(c), the Trustee must allege enough facts for a reasonable inference that (1) the Ernsts transferred moneys to NDR; (2) on or within two years before the date of the filing of their bankruptcy petition; (3) received less than a reasonably equivalent value in exchange for the transfers; and (4) either were insolvent on the dates the transfers were made or became insolvent as a result of the transfers. *See* 11 U.S.C. § 548(a)(1)(B)(i)-(ii)(I). This count fails, because it cannot be reasonably inferred that the Ernsts transferred the alleged amount to NDR or that NDR provided the services those payments allegedly bought.

### B. The Turnover Count Fails.

Although the Trustee titled this count "Turnover of Estate Property," it requests that NDR be required to turn over not estate property but "any and all records . . . related to any and all aspects of the promised services" under 11 U.S.C. § 542(e). Am. Compl. ¶ 78. "[T]he court may order an attorney, accountant, or other person that holds recorded information . . . relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee." 11 U.S.C. § 542(e). "[D]ocuments which are not property of the estate may still be subject to turnover under Section 542(e) if they relate to the debtor's property or financial affairs . . . ." *Faulkner v. Kornman (In re Heritage Org., L.L.C.)*, 350 B.R. 733, 739 (Bankr. N.D. Tex. 2006).

The Trustee seeks "information 'related to' the $10,000" she alleges the Ernsts paid NDR. ECF No. 21 at 4. But the facts do not support the inference that the Ernsts paid NDR $10,000. The facts support the inference that the Ernsts paid Gitmeid for services performed under the Gitmeid Contract. Accordingly, there is no basis on which to order turnover from NDR.

### C. The Accounting Count Fails.

The Trustee seeks an accounting under § 542(a), which provides that "an entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease . . . shall deliver to the trustee, *and account for*, such property or the value of such property." 11 U.S.C. § 542(a) (emphasis added). The information the Trustee seeks would ascertain "[t]he precise amount of money due from NDR to [the Ernsts]." Am. Compl. ¶ 91. But again, the facts do not support the inference that the Ernsts paid NDR for services performed under the Gitmeid Contract. Accordingly, there is no basis on which to order an accounting.

### IV. ORDER

The pleadings show that the Trustee cannot prevail on the merits of the bankruptcy counts.

**IT IS THEREFORE ORDERED** that the Motion for Judgment on the Pleadings is **GRANTED** as to Counts I, II, and III of the Amended Complaint.

*##END##*

9