

**SO ORDERED,**

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: March 29, 2021**

The Order of the Court is set forth below. The docket reflects the date entered.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: MATTHEW P. ERNST<br>HANNAH N. ERNST | CASE NO. 20-50368-KMS |
| DEBTORS | CHAPTER 7 |
| KIMBERLY R. LENTZ.,<br>as Chapter 7 Trustee for the Bankruptcy Estate of<br>Matthew P. Ernst & Hannah N. Ernst, Debtors | PLAINTIFF |
| V. | ADV. PROC. NO. 20-06018-KMS |
| NATIONAL DEBT RELIEF LLC | DEFENDANT |

## OPINION AND ORDER DENYING MOTION TO DISMISS

This matter came on for hearing on the following motions by Defendant National Debt Relief LLC ("NDR"): the Motion for Judgment on the Pleadings or to Compel Arbitration, ECF No. 17, with Response by Plaintiff Kimberly R. Lentz ("the Trustee"), ECF No. 21; and the Motion to Dismiss, ECF No. 13, also with Response by the Trustee, ECF No. 20.

The dispute centers on the alleged prepetition participation by Debtors Matthew P. Ernst and Hannah N. Ernst in what the Trustee describes as NDR's "debt relief and credit repair program." Am. Compl. ¶ 4, ECF No. 12. The Amended Complaint ("Complaint") alleges that the Ernsts enrolled in the program approximately four years before filing their chapter 7 case; that

NDR misrepresented the program's benefits; and that in reliance on the misrepresentations, the Ernsts suffered injury.

The Complaint alleges four counts. Counts I, II, and III are core under, variously, 28 U.S.C. § 157(b)(2)(A), (E), and (H)—for turnover of records under 11 U.S.C. § 542(e), avoidance of fraudulent transfers under 11 U.S.C. § 548(a) with recovery under 11 U.S.C. § 550, and an accounting under 11 U.S.C. § 542(a). *Id.* ¶¶ 71-91, ECF No. 12 at 9-11. Count IV is non-core under the Credit Repair Organizations Act (CROA), 15 U.S.C. §§ 1679-1679j. In Count IV ("CROA Count"), the Trustee seeks damages or, in the alternative, rescission of NDR's alleged agreement with the Ernsts and restitution of the more than $10,000 that, according to the Trustee, the Ernsts paid NDR. Am. Compl. ¶ 117, ECF No. 12 at 14-15. Taken together, the motions seek a judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure ("Rules") on the bankruptcy counts; and as to the CROA Count, either dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)[1] based on the Trustee's lack of standing, or if there is standing, either an order compelling arbitration or a judgment on the pleadings.

NDR does not consent to entry of final orders or judgment in non-core proceedings. Answer, ECF No. 16 at 2. Absent consent, a bankruptcy court may not enter final orders or judgment in non-core proceedings but instead must submit proposed findings of fact and conclusions of law to the district court for de novo review. *See generally* 28 U.S.C. § 157(b)-(c) (defining core and non-core proceedings and setting out bankruptcy court's authority as to each).

Litigation on the merits of the CROA Count would be a non-core proceeding. The Motion to Dismiss for lack of subject matter jurisdiction, however, is a core proceeding. *See Etterbeek v.*

---

[1] Rules 12(b) and (c) of the Federal Rules of Civil Procedure apply in adversary proceedings. Fed. R. Bankr. P. 7012(b).

2

*APTCAM, LLC (In re Lewiston)*, 521 B.R. 811, 814 (Bankr. E.D. Mich. 2014) (determining subject matter jurisdiction on motion to remand or abstain); *Bavelis v. Doukas (In re Bavelis)*, 453 B.R. 832, 845 (Bankr. S.D. Ohio 2011); *Ludwig & Robinson, PLLC v. Yelverton Law Firm, PLLC (In re Yelverton)*, Adv. No. 11-10001, 2011 WL 2975967, at *1 (Bankr. D.C. July 20, 2011); *Casey v. Grasso (In re Riccitelli)*, 320 B.R. 483, 487 (Bankr. D. Mass. 2005); *see also* Fed. R. Civ. P. 12(h)(3) (as applied under Fed. R. Bankr. P. 7012) ("If the [bankruptcy] court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Accordingly, this Court "may enter appropriate orders and judgments," 28 U.S.C. § 157(b)(1), on the Motion to Dismiss.

This Opinion and Order resolves only the Motion to Dismiss the CROA Count, which is denied. The Motion for Judgment on the Pleadings as to the bankruptcy counts is granted separately. See ECF No. 32. As to the Motion for Judgment on the Pleadings or to Compel Arbitration of the CROA Count, the Court submits separately to the district court Proposed Findings of Fact and Conclusions of Law Recommending Entry of Order Compelling Arbitration and Dismissing CROA Count. *See* ECF No. 34.

### I. STANDARD UNDER RULE 12(b)(1)

"Without jurisdiction the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Consequently, the request for dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction must be considered before the request for judgment on the pleadings under Rule 12(c) or the request for an order compelling arbitration. *See Lower Colo. River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 927 (5th Cir. 2017) ("court must have subject matter jurisdiction over the underlying dispute in order to compel arbitration"); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("When a Rule 12(b)(1) motion is

filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.").

A challenge to subject matter jurisdiction may be either facial or factual. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). A facial attack challenges the sufficiency of the complaint to allege jurisdiction. *Id.* A factual attack challenges "the underlying facts supporting the complaint." *Cell Sci. Sys. Corp. v. La. Health Serv.*, 804 F. App'x 260, 263-64 (5th Cir. 2020). The court may dismiss for lack of subject matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161.

NDR asserts three arguments against subject matter jurisdiction, all challenging the Trustee's standing to bring the CROA Count. First, the Trustee alleges injuries that are outside CROA's scope. ECF No. 28 at 1, 8. Second, the Trustee alleges only bare procedural violations that do not satisfy the concreteness requirement for injury in fact. ECF No. 14 at 10, 13. And third, the Trustee has sued the wrong party. ECF No. 14 at 10, 11; ECF No. 28 at 8-11. Whether the injuries are outside CROA's scope and whether the Trustee has sued the correct party go to the merits, not to standing, and are therefore not considered under Rule 12(b)(1). *See Grant v. Gilbert*, 324 F.3d 383, 387 (5th Cir. 2003) ("It is inappropriate for the court to focus on the merits of the case when considering the issue of standing."). Only the concreteness argument goes to standing. The challenge is facial because it is based on the allegations in the Complaint.

On a facial challenge, the court considers the allegations in the complaint as true. *Williamson*, 645 F.2d at 412. "At the pleading stage, allegations of injury are liberally construed." *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009) (citing *Lujan v. Defens. of Wildlife*, 504 U.S. 555, 561 (1992)). "If th[e] jurisdictional allegations are sufficient the complaint stands." *Paterson*, 644 F.2d at 523.

## II. JURISDICTIONAL ALLEGATIONS

CROA is a consumer protection law enacted to, in part, "protect the public from unfair or deceptive advertising and business practices by credit repair organizations." Am. Compl. ¶¶ 35, 36, ECF No. 12 at 5 (quoting 15 U.S.C. § 1679(b)(2)). Prohibited acts include misrepresentation and fraud or deception:

> [(a)] No person may—
>
> . . . .
>
> (3) make or use any untrue or misleading representation of the services of the credit repair organization; or
>
> (4) engage, directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization.

15 U.S.C. § 1679b(a)(3)-(4); Am. Compl. ¶ 113.

The Complaint alleges:

NDR is a credit repair organization. Am. Compl. ¶ 38. "NDR created a financial program for the purpose of targeting distressed consumers." *Id.* ¶ 1. The Ernsts enrolled in that program. *Id.* ¶ 2. NDR told the Ernsts to stop paying their creditors and instead pay over $500 per month into NDR's program. *Id.* ¶¶ 57, 59. Between May 2016 and January 2020, the Ernsts paid over $10,000. *Id.* ¶ 95. NDR violated § 1679b(a)(3) and (4) by misrepresenting to the Ernsts that its

5

program would provide debt relief, improved credit ratings, and bankruptcy avoidance. *Id.* ¶¶ 96, 97, 113. The Ernsts suffered the following injuries in reliance on the misrepresentations: Loss of over $10,000; loss of the use of over $10,000 during the program; credit deterioration; increase in the amount of their debts during the program; bankruptcy; and emotional distress. *Id.* ¶¶ 56, 63-66, 68-70. The Trustee seeks actual damages either in the amount of the Ernsts' actual damages or the amount they paid NDR, whichever is greater; punitive damages; and attorney's fees and costs; or in the alternative, rescission of the Ernsts' agreement with NDR and restitution of the amount paid. *Id.* ¶ 117.

### III. CONCLUSIONS OF LAW

The doctrine of standing restricts the category of litigants who may sue in federal court and is rooted in the Constitution's limitation of federal court jurisdiction to "Cases" and "Controversies." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting U.S. Const. art. III, § 2). To establish the "irreducible constitutional minimum" of standing at the pleading stage, the plaintiff must clearly allege facts demonstrating three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v. Defens. of Wildlife*, 504 U.S. 555, 560-61 (1992); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

### A. The Complaint Alleges Injury in Fact

The first element of the "irreducible constitutional minimum of standing" is injury in fact. *Lujan*, 504 U.S. at 560. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S.

6

at 560). At the pleading stage, the injury in fact requirement "is not Mount Everest." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278-79 (3d Cir. 2014).

### 1. Whether the Alleged Injuries Are Outside CROA's Scope Goes to the Merits.

NDR argues that the Trustee has not alleged an invasion of a legally protected interest under CROA. ECF No. 28 at 8. NDR is mistaken. When it enacted CROA, Congress created a new legally protected interest. *See Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[I]njury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . . .'"). The interests Congress sought to protect through CROA are expressed in the statute's statement of purposes, which include ensuring that consumers are protected against deceptive practices by credit repair organizations. *Ensminger v. Credit Law Ctr., LLC*, No. 19-2147-JWL, 2019 WL 4341215, at *5 (D. Kan. Sept. 12, 2019). Accordingly, when the Trustee alleged that NDR is a credit repair organization and that it misrepresented the benefits of its program, resulting in injury to the Ernsts as consumers, she adequately alleged the invasion of a legally protected interest.

Whether the alleged injuries are outside the statutory scope goes to the merits, not to standing. "The requirement of standing 'focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 484 (1982) (quoting *Flast v. Cohen*, 392 U.S. 83, 99 (1968)); *see also Bond v. United States*, 564 U.S. 211, 219 (2011) ("[T]he question whether a plaintiff states a claim for relief 'goes to the merits' in the typical case, not the justiciability of the dispute, and conflation of the two concepts can cause confusion." (citation omitted)); *Baker v. Carr*, 369 U.S. 186, 200 (1962) ("[I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of

7

jurisdiction."); *Hill v. City of Houston*, 764 F.2d 1156, 1159 (5th Cir. 1985) ("[S]tanding involves whether this plaintiff is a proper party to request an adjudication of the particular issue. This is a separate inquiry from whether the party should prevail.").

NDR relies on the following paragraph from *Wendt v. 24 Hour Fitness USA, Inc.*, 821 F.3d 547 (5th Cir. 2016), in which the Fifth Circuit Court of Appeals linked the question of injury in fact to the question of injury under the statute:

> "[W]here, as here, a plaintiff's claim of injury in fact depends on legal rights conferred by statute, it is the particular statute and the rights it conveys that guide the standing determination." "Essentially, the standing question in such cases is whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *"Hence, the 'injury in fact' analysis for purposes of Article III is directly linked to the question of whether the plaintiff "has suffered a cognizable statutory injury under the" statute in question.*

*Id.* at 552 (emphasis added) (footnotes omitted).

But *Wendt* does not support NDR's argument. In *Wendt*, members of a health club sued the club for technical violations of the Texas Health Spa Act. *Id.* at 549. The statute stated that a member was authorized to sue only when the violation caused injury to the member. *Id.* at 552. The plaintiffs conceded that they suffered no injury from the alleged violations. *Id.* at 549 & n.2. That concession was the basis of the court's ruling that the plaintiffs lacked Article III standing. *Id.* at 553. In other words, the dismissal in *Wendt* was not because the plaintiffs alleged injuries that were outside the scope of the statute, as NDR says the Trustee has done; the dismissal was because the plaintiffs admitted they were not injured at all.

Contrary to NDR's argument, the Fifth Circuit has consistently held that the standing analysis is separate from the question of whether a plaintiff can recover for the alleged injuries. *See Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 168-69 (5th Cir. 2016) (Whether plaintiffs could recover damages for emotional distress under the applicable statute was "not properly

analyzed as a question of Article III standing."); *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007) ("Whether recovery for such a claim is permitted under governing law is a separate question; it is sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered."). Accordingly, there is no merit to NDR's argument that the Trustee lacks standing because CROA does not apply to the injuries alleged.

### *2. The Alleged Injuries Are Concrete, Particularized, and Actual.*

NDR's argument that the Trustee has alleged only bare procedural violations goes to the concreteness requirement. For an injury to be "concrete," it must "actually exist"; it must be "real and not abstract." *Spokeo,* 136 S. Ct. at 1548 (internal quotation marks omitted). NDR correctly states that "[a] plaintiff cannot 'allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement [of] Article III.'" ECF No. 14 at 7-8 (quoting *Spokeo*, 136 S. Ct. at 1549).

In support, NDR cites *Perta v. Nat'l Credit Care Corp.*, No. 18-cv-5767, 2019 WL 4750098 (N.D. Ill. Sept. 30, 2019). There, as here, the plaintiff sued under CROA, seeking "reimbursement of all monthly charges that she paid to Defendants 'for [their] misrepresentations regarding both the substance and efficacy of their services.'" *Id.* at *5. But the complaint "[did] not plead the consequences of the misrepresentations," for example, that the plaintiff's credit score did not improve. *Id.* As a result, the plaintiff had not pleaded a concrete injury that conferred Article III standing. *Id.*

Here, in contrast, the Trustee alleges that the Ernsts suffered the following injuries: Loss of or loss of the use of $10,000; credit deterioration; increase in the amount of their debts during the program; bankruptcy; and emotional distress. All these injuries are concrete. *See Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 999 (11th Cir. 2020) (stating that "personal

9

bankruptcies" are one of the "serious harms" against which the Fair Debt Collection Practices Act was directed); *Ecosystem Inv. Partners v. Crosby Dredging, L.L.C.*, 729 F. App'x 287, 293 (5th Cir. 2018) ("[f]or standing purposes, a loss of even a small amount of money is ordinarily an 'injury'"); *Rideau*, 819 F.3d at 168-69 ("[E]motional harm satisfies the 'injury in fact' requirement of constitutional standing."); *Ensminger* 2019 WL 4341215, at *2 (holding that loss of time value of money constituted concrete injury); *Clements v. Trans Union, LLC*, No. 3:17-CV-00237, 2018 WL 4519196, at *4-5 (S.D. Tex. Aug. 29, 2018) (allegation of reduced credit score was sufficient to establish injury for standing purposes, even if insufficient to constitute actual damages under Fair Credit Reporting Act) (*R&R adopted by Clements v. Trans Union, LLC*, 2018 WL 4502255 (S.D. Tex. Sept. 20, 2018)); *Bryant v. Holder*, No. 2:10-CV-76-KS-MTP, 2011 WL 710693, at *8 (S.D. Miss. Feb. 3, 2011) ("Generally speaking, allegations of economic injury are sufficient for purposes of establishing the injury-in-fact element of standing."). Accordingly, there is no merit to NDR's argument that the Trustee alleged only bare procedural violations.

NDR does not challenge whether the alleged injuries are "particularized" and "actual or imminent." *See Lujan*, 504 U.S. at 560. But, as it must, this Court has independently analyzed these elements. "By particularized, we mean that the injury must affect the plaintiff in a personal and individual way." *Id.* at 561 n.1. All the alleged injuries affect the Ernsts in a personal and individual way and therefore meet the particularization requirement. The alleged injuries also are actual, not "'conjectural' or 'hypothetical.'" *Id.* at 560.

### B. The Complaint Alleges a Causal Connection Between Injury and Conduct.

Besides injury in fact, Article III requires "a causal connection between the injury and the conduct complained of." *Id.* at 560. This traceability element "requires something more than conjecture . . . but less than certainty." *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 968

10

F.3d 357, 368 (5th Cir. 2020). "After all, the standard is that the injury be *fairly* traceable to the challenged conduct, not definitively so." *Id.* At the pleading stage, meeting this standard is a "relatively modest" burden. *Bennett v. Spear*, 520 U.S. 154, 170-71 (1997).

NDR argues that traceability is missing here because the Ernsts in fact did not pay NDR; they instead paid two other companies that the Trustee did not sue. ECF No. 14 at 10-11; ECF No. 28 at 8-9. In support of this argument, NDR relies on two contracts attached to the Answer and the motions: Client Retainer Agreement ("Gitmeid Contract") between the Ernsts and the Law Offices of Robert S. Gitmeid & Associates PLLC ("Gitmeid"), ECF No. 16-1; and Dedicated Account Agreement and Application ("Global Contract") between Matthew Ernst and Global Client Solutions LLC ("Global"), ECF No. 16-2. NDR also relies on two exhibits attached only to the motions: the online records of the Mississippi Secretary of State's office showing that Gitmeid, not NDR, was registered to do business in Mississippi at the relevant time. ECF Nos. 13-2, 17-2; ECF Nos. 13-3, 17-3.

The Trustee does not dispute these documents. But she asserts that the Ernsts also had a contract with NDR ("NDR Contract"), as shown by the Complaint's exhibit of an email correspondence history between the Ernsts and NDR. *See* ECF No. 12-1 at 1-2. According to this history, a document titled "Debt Relief Agreement for Matthew Ernst" was emailed to and electronically signed by both the Ernsts. *Id.* at 2.

But all these exhibits are irrelevant under Rule 12(b)(1), because whether the Trustee sued the correct party does not go to standing. *See Davis v. Wells Fargo*, 824 F.3d 333, 347 (3d Cir. 2016). In *Davis*, the defendant insurance company, Assurant, asserted that the plaintiff, Davis, lacked standing because he had sued the wrong corporate entity—Assurant, the parent, instead of its wholly owned subsidiary. *Id.* at 346. Assurant argued, as does NDR, that the plaintiff's alleged

11

injury was not fairly traceable to its conduct and that a judgment against Assurant would not redress the harm the plaintiff allegedly suffered due to the subsidiary's conduct. *Id.* at 347. The appeals court called Assurant's argument "wrong" and described it as "a well-disguised challenge to the legal merits of Davis's case, not as a challenge to his standing to pursue it." *Id.* The court said it did not believe that the Supreme Court's phrasing in *Lujan*, "'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court' was meant to transform ordinary merits arguments about who is legally responsible for an injury into questions of jurisdiction." *Id.* n.16 (citation omitted) (quoting *Lujan*, 504 U.S. at 560). Further, "[Assurant's] contention that [its subsidiary] is the proper defendant may, in the end, be a strong merits defense against Davis's claims, but it does not mean that Davis does not have standing to bring his claims, and to bring them against Assurant." *Id.* at 347. Consequently, it was error for the claims to have been considered under Rule 12(b)(1). *Id.* at 338. "If for no other reason, a case or controversy exists to determine whether Davis is suing the right insurance company . . . . Davis argues that Assurant may be held responsible; Assurant argues that it may not. That is a merits question." *Id.* at 348.

As *Davis* makes clear, the question is not whether the plaintiff's injuries are traceable to the *defendant* but whether the injuries are traceable to the complained-of *conduct*. Here, the conduct is alleged statements that, according to the Trustee, misled the Ernsts into believing the program they were enrolling in would provide debt relief, improved credit ratings, and bankruptcy avoidance. At minimum, the loss of or loss of the use of $10,000—the amount the Trustee alleges the Ernsts paid—is fairly traceable to the purported misrepresentations. Accordingly, there is no merit to NDR's argument that the Complaint fails to allege traceability.

### C. The Complaint Alleges Redressability.

Finally, Article III requires redressability, meaning "a likelihood that the requested relief will redress the alleged injury." *Steel Co.*, 523 U.S. at 103. "The specific items of relief sought must serve either to reimburse the plaintiff for losses caused by the defendant's wrongful act, or to eliminate any effects of that act upon the plaintiff." *Mylonakis v. M/T Georgios M.*, 909 F. Supp. 2d 691, 725 (S.D. Tex. 2012) (citing *Steel Co.*, 523 U.S. at 105-06).

NDR, again confusing standing with merits, argues that the alleged injuries are not redressable under CROA. ECF No. 14 at 12. This argument is misplaced. CROA subjects a defendant to liability for actual damages either in the amount sustained by the plaintiff or in any amount the plaintiff paid the defendant, whichever is greater, and punitive damages "as the court may allow." 15 U.S.C. § 1679g(a)(1)-(2)(A). The Trustee seeks an award of damages as reimbursement for the Ernsts' losses. Consequently, a favorable judicial decision would likely redress the alleged injuries.

### IV. ORDER

The Complaint alleges facts demonstrating injury in fact that is fairly traceable to the challenged conduct and likely to be redressed by a favorable decision. Consequently, the Trustee has established standing under Article III.

The Motion to Dismiss the CROA Count for lack of subject matter jurisdiction is therefore **ORDERED DENIED**.

##END##